FRANCIS E. COSTELLO *v.* HARTFORD
INSTITUTE OF ACCOUNTING, INC.
(12191)

PETERS, HEALEY, GRILLO, ARMENTANO and COVELLO, Js.

Argued March 6—decision released May 15, 1984

*Bruce H. Stanger,* with whom, on the brief, was *William A. Wechsler,* for the appellant (defendant).

*George D. Brodigan,* for the appellee (plaintiff).

GRILLO, J. The plaintiff, a general contractor conducting business under the name of "Francis E. Costello, Building Contractor," instituted an action in 1982 to recover for maintenance and repair services performed from 1979 to 1982 on property owned by the defendant, The Hartford Institute of Accounting, Inc. A default for failure to appear was rendered against the defendant, and the court rendered judgment for the plaintiff in the amount of $25,356.36. After the trial court denied its motion to open the judgment of default, the defendant filed the present appeal from the denial of its motion and from the judgment rendered upon the default. The defendant claims that the court lacked jurisdiction to render a judgment of default in the absence of a hearing in damages. In the alternative, it maintains that the trial court's denial of its motion to open the judgment of default was erroneous.

The following facts are gleaned from the complaint, the exhibits and the affidavits pertaining to the motion to open judgment.[1] From the fall of 1979 and through January of 1982, the plaintiff rendered various services for the defendant including roof repair, painting, plumbing, carpentry work, electrical work, snow plowing, lawn maintenance, and overall services of main-

---

[1] We note that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to a judgment. Thus, the defaulted defendant is precluded from making any further defense to the action. See *United National Indemnity Co.* v. *Zullo,* 143 Conn. 124, 129–30, 120 A.2d 73 (1956).

tenance and repair. During this period, the plaintiff submitted approximately twenty-one bills to the defendant. Except for two occasions, he was not paid for the work done, despite assurances that he would be. At no time did the defendant complain about the quality of the services performed.

In February of 1982, the plaintiff turned the matter over to counsel. Correspondence with the defendant corporation resulted in the submission, on March 1, 1982, to the defendant of an itemized accounting of work completed. On March 25, 1982, the plaintiff again submitted copies of each of the twenty-one bills which he had sent to the defendant during his years of service. These bills were neither contested nor paid.

Suit was subsequently commenced. After the defendant failed to appear, the plaintiff moved for default and judgment for failure to appear. At the same time, in support of his motion for judgment and pursuant to rule 364 (b)[2] of the Practice Book, the plaintiff submitted an account. Both the motion for default and judgment and the plaintiff's account were sent to the defendant at its post office address, and also to the principal officer of the corporation at her residence, being specifically addressed to Marjorie Wechsler. Neither copy of these pleadings was returned to counsel.

On July 30, 1982, the court granted a default. On September 2, 1982, the plaintiff moved for judgment, specifically alleging compliance with § 364 (b). A copy of this motion was sent to the defendant at its post office

---

[2] Practice Book § 364 (b) provides: "Since the effect of a default is to preclude the defendant from making any further defense in the case so far as liability is concerned, the court, at the time it renders the default, may also render judgment in foreclosure cases, in actions similar thereto, and in any contract action where the damages are liquidated, provided the plaintiff has also made a motion for judgment and provided further that any necessary affidavits of debt or accounts or statements verified by oath, in proper form, are submitted to the court."

address, and also to the principal officer of the corporation, it being specifically addressed to Marjorie Wechsler. Once again, neither copy of this pleading was returned to counsel.

On September 27, 1982, the court sent notice of the judgment to the parties. This was received by the defendant. On January 18 and 19, 1983, within one week of the expiration of the time prescribed by Practice Book § 377 relative to opening judgments after default,[3] the defendant moved to open the judgment. The motions of January 18 and 19 were accompanied by affidavits of counsel.

Upon notice by the plaintiff, on January 31, 1983, the court heard oral argument, at which time the defendant filed an affidavit by Marjorie Wechsler representing that the principal officer of the defendant was a Germaine C. Carroll, who was seventy-six years old, a diabetic, and in poor health; that Carroll was unaware of the significance of filing the complaint

---

[3] Practice Book § 377 provides: "OPENING JUDGMENT UPON DEFAULT OR NONSUIT. "Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which it was rendered or passed, and the case reinstated on the docket on such terms in respect to costs as the court deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear. The court shall order reasonable notice of the pendency of such written motion to be given to the adverse party, and may enjoin him against enforcing such judgment or decree until the decision upon such written motion.

"If the court opens a nonsuit entered pursuant to Sec. 363, the court as part of its order may extend the time for filing pleadings or disclosure."

by the plaintiff; that she had not sought counsel; and that "[t]o the best of my knowledge" Carroll had not received a copy of the judgment.

After hearing oral argument, the court requested briefs, which were filed by both parties on February 8, 1983. At that time, both the plaintiff and his counsel filed affidavits to counter that of Marjorie Wechsler of January 31, 1983. Taken together, these affidavits stated the following: (a) during the period when the work was performed, the plaintiff dealt almost exclusively with Marjorie Wechsler; (b) during the period before suit was instituted the plaintiff's counsel dealt exclusively with Marjorie Wechsler, not Germaine C. Carroll; (c) the defendant had notice of the proceedings before suit was instituted, and the complaint was properly served on the defendant in accordance with statutory requirements; and (d) the defendant and its principal officer were both sent copies of the motion for default and the motion for judgment.

On April 14, 1983, the court denied the defendant's motion to open the judgment of default. Thereafter, the defendant moved to reargue its motion to open the judgment, filing a third affidavit, again by Marjorie Wechsler. This affidavit made representations as to the authority of the plaintiff to perform the work for which he billed, the quality of his work, and the amounts he billed for the same. The court denied this motion without opinion. Thereafter, the defendant filed its notice of appeal.

In its first claim of error, the defendant argues that since the amount demanded in the complaint exceeded $15,000, Practice Book § 356 (c)[4] required that the trial court conduct a hearing in damages prior to render-

[4] Practice Book §§ 357 through 362 provide an expedited and informal procedure for obtaining judgments in certain actions involving limited amounts of damages. The judgment after a default was rendered on September 23, 1982. At that time Practice Book § 356 (c) provided: "Secs. 357

ing a judgment after a default. The defendant maintains that since this is not a case involving liquidated damages, Practice Book § 364 (b),[5] which provides an exception to the hearing in damages requirement, did not apply. We disagree.

In its memorandum of decision, the trial court found that the defendant was on notice of the motion for judgment and that the plaintiff had fully complied with the provisions of § 364 (b). The court then framed the determinative issue at both the trial level and on appeal when it stated that "[w]hether the court had jurisdiction to enter a judgment in excess of $15,000 without first holding a hearing in damages, hinges on whether this was a contract action where the damages were liquidated." The court proceeded to render judgment for the plaintiff, finding that the "damages were ascertainable by computation of [the] plaintiff's billings which [the] defendant was aware of and did not contest."

When a debtor knows precisely how much he is to pay and to whom he is to pay it, his debt is a liquidated one. 22 Am. Jur. 2d, Damages §§ 180, 184 (1965). An amount claimed to be due is a liquidated sum when it is "susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in the possession or knowledge of the party to be charged." *Rifkin* v. *Safenovitz*, 131 Conn. 411,

through 362 shall not be applicable to: . . . (c) any action in which the amount in demand exceeds seven thousand five hundred dollars." This section was amended effective October 1, 1982, by substituting $15,000 as the jurisdictional amount of the Appellate Session for the $7500 figure.

[5] Practice Book § 364 (b) provides: "Since the effect of a default is to preclude the defendant from making any further defense in the case so far as liability is concerned, the court, at the time it renders the default, may also render judgment in foreclosure cases, in actions similar thereto, in summary process actions and in any contract action where the damages are liquidated, provided the plaintiff has also made a motion for judgment and provided further that any necessary affidavits of debt or accounts or statements verified by oath, in proper form, are submitted to the court."

414, 40 A.2d 188 (1944), quoting *Cochrane* v. *Forbes,* 267 Mass. 417, 420, 166 N.E. 752 (1929); see *Perri* v. *Cioffi,* 141 Conn. 675, 678, 109 A.2d 355 (1954). It is sufficient for this purpose if the debt is measurable by a fixed or established external standard, or by a standard apparent from the documents upon which the plaintiff bases his claim. *Ramada Development Co.* v. *United States Fidelity & Guaranty Co.,* 626 F.2d 517, 525 n.11 (6th Cir. 1980). Unliquidated damages, on the other hand, are those which are "not yet reduced to a certainty in respect to amount, nothing more being established than the plaintiff's right to recover; or such as cannot be fixed by a mere mathematical calculation from ascertainable data in the case." Black's Law Dictionary (4th Ed. 1968).

In the present case, the fixed amount of damages claimed when the plaintiff moved for judgment was made known to the defendant during the course of the parties' dealings. The defendant, no less than three times, was informed of the precise amount of its obligation to the plaintiff: when each bill was rendered; when, at its request, the bills were compiled and resubmitted to the defendant; and when the plaintiff moved for default and judgment, submitting his statement of account to the court and sending a copy of the account to the defendant. We hold that the defendant's failure to respond to repeated, exact billings and accountings cause their content, in due course, to become liquidated within the meaning of § 364 (b), notwithstanding the parties' failure during their initial discussions to agree on the precise amount of compensation for the services to be rendered. Accordingly, the trial court did not err either in rendering a judgment without a hearing in damages or in denying the motion to open.

The defendant's second claim that the trial court erred in denying its motion to open judgment is similarly without merit. It is well established that the action

of the trial court, in either granting or denying a motion to open a default judgment, lies within its sound discretion. "A trial court's conclusions are not erroneous unless they violate law, logic, or reason or are inconsistent with the subordinate facts in the finding." *Kaplan & Jellinghaus* v. *Newfield Yacht Sales, Inc.,* 179 Conn. 290, 292, 426 A.2d 278 (1979).

"In order to set aside a judgment passed upon default, there must be a showing that (1) a good defense existed at the time judgment was rendered; *and* (2) the party seeking to set aside the judgment was prevented from appearing because of mistake, accident, or other reasonable cause." (Emphasis added.) Id., 292; see also General Statutes § 52-212 (a);[6] Practice Book § 377. Since the conjunctive "and" meaning "in addition to" is employed between the parts of the two prong test, both tests must be met. See Roget's International Thesaurus (4th Ed.) § 40.13.

The defendant's motion to open judgment and supporting affidavits attempt to predicate a finding of reasonable cause on the fact that the president of the defendant corporation was an ailing, diabetic elderly woman who did not comprehend the significance of the complaint or other legal proceedings. If we assume, arguendo, that these facts would furnish a basis for a finding of reasonable cause, a deficiency still exists since the defendant fails to allege any purported

---

[6] General Statutes § 52-212 (a) provides: "REOPENING JUDGMENT UPON DEFAULT OR NONSUIT. (a) Any judgment rendered or decree passed upon a default or nonsuit in the superior court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

defense to the action. It was not until May 4, 1983, after the court had summarily denied the defendant's motion to open, that Wechsler's second affidavit was submitted. The clear purpose of this affidavit was to attempt to satisfy the second prong of General Statutes § 52-212 and Practice Book § 377; that is, that a "good defense" existed. This affidavit belatedly suggests that the amounts claimed by the plaintiff were excessive and unreasonable, and that the work was not satisfactorily completed. Since this defense was not timely offered, it is unnecessary for us to consider its probable validity. The conclusion of the trial court that no "defense in whole or in part to the complaint [was offered] at the time of the judgment" is legally and logically consistent with the facts found and does not involve the application of any erroneous principles of law. *Roby* v. *Connecticut General Life Ins. Co.*, 166 Conn. 395, 397, 349 A.2d 838 (1974). The defendant failed to sustain its burden prior to rendition of judgment. Accordingly, the trial court properly rendered judgment for the plaintiff and properly denied the defendant's motion to open.

There is no error.

In this opinion the other judges concurred.