[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action has been brought by a landlord against a former tenant to recover rent claimed to be owing pursuant to a written lease. In addition to denying the plaintiff's claim, the defendant has pleaded four special defenses, namely: payment in full, modification of the lease, waiver [by the plaintiff] of sums allegedly due and termination of the lease prior to any default by the defendant.
From the evidence presented, the following facts are found to have been established. On or about November 1, 1988, the parties executed a written lease whereby the defendant was to occupy space in buildings owned by the plaintiff on Grove Street in Waterbury. Although not explicitly stated, the purpose of the lease was to provide housing and support services for clients of the defendant under programs known as Cornerstone and Steppingstone which are sponsored by the Department of Mental Health. The lease had an original term of one year commencing on December 1, 1988 with options to renew at monthly rentals of $16,500.00 payable on the first day of each month. If all units were not ready for occupancy on December 1, 1988, the final paragraph of the lease provided for pro rata payments on a per diem basis. With respect to utility charges, the lease stated that the tenant was to pay for all services used by it.
When the lease was executed, the defendant's clients in the Cornerstone and Steppingstone programs were housed in a complex known as Shamrock Ridge owned by Fedkin Limited Partnership. The move to the plaintiff's buildings was accomplished by Flynn's Moving Co. who was hired by the defendant. The move occupied several days between November 30 and December 10, 1988. At the plaintiff's buildings, the move-in was coordinated by Duane Boise. At the time, Mr. Boise was the plaintiff's property manager as well as a member of the defendant's board of directors.
One area of controversy that is highlighted by the special CT Page 1818 defenses of payment in full, modification of the lease and waiver is the amount of rent that was owed for the month of December, 1988. On December 12, 1988, a meeting was held between Alice Ferraro and Duane Boise representing the plaintiff and Reverend Cascia, Attorney McGill and Paul Iadarola for the defendant. At the time, the defendant was having difficulty with its former landlord. In a letter dated December 2, 1988, the general partner of Shamrock Ridge wrote that since proper notice of vacating had not been given, rent continued to accrue through December 15, 1988 and also that extensive damage had been done to some of the apartments. According to the defendant's witnesses, the purpose of the meeting was an attempt to satisfy both landlords.
What occurred at the meeting was the subject of dispute. The defendant's witnesses testified that upon their request, the plaintiff agreed to accept one-half of the amount due or $8,250.00 as full payment of the December rent. The plaintiff's witnesses admitted to receiving the sum of $8,250.00 some time after the meeting but denied that it was accepted as full payment. Testimony from the plaintiff's witnesses Duane Boise was that the defendant was informed that one-half of the rent could be paid then and the remainder could be paid later. In January or February, 1989, Attorney McGill settled the claim of Fedkin Limited Partnership against the defendant for rent owed and damage done at Shamrock Ridge. The amount of the settlement was payment by the defendant of $10,000.00 plus Fedkin keeping the security deposit.
The defendant paid the full rent due for all months subsequent to December 1988 until March, 1990, when only $13,706.07 was paid. On March 20, 1990, the defendant quit the leased premises. The first written demand for unpaid rent was a letter from the plaintiff in March of 1989 concerning the $8,250.00 owed for the previous December.
Another aspect of at least some of the special defenses rests upon contentions of setoffs created by the defendant's payment of heat and utility charges for units in the buildings that were rented by the plaintiff to others. As mentioned, the lease obligated the defendant to pay for all utility services used by it. Implicit in this provision is that the plaintiff was responsible for utility services in units not rented to the defendant.
During the defendant's occupancy, it paid bills for heating fuel, water and electricity for all of the units in the buildings. Some of the buildings were heated by oil and others by natural gas or electricity. The method used by the defendant in its apportionment was to determine the number of units in a building, divide the amount of an invoice by the number of units and claim a CT Page 1819 credit for the "per unit" amounts not occupied by the defendant's clients. In this sense, the term "unit" was synonomous with apartment rather than the designation of a unit by the Department of Mental Health. The Department insisted only on a single bedroom for each such client with access to a kitchen and livingroom.
The method of apportionment did not take into account the size of any unit. Patricia Gray, the defendant's bookkeeper testified that she had requested square footage figures from Duane Boise and never had received them. Boise denied receiving such a request but the plaintiff had reimbursed the defendant based upon "per unit" computations.
The defendant paid $7,234.36 for heat and utility charges. The claim is that $2,793.93 should be set off from whatever rental obligation it may have. Included in the defendant's computations, however, are deductions for units occupied by Father Graham. Reverend James Graham operated a program for aids patients known as Sts. Martin and James Respite, Inc. which was started on the leased premises in early Spring, 1989 as a sublessee of the defendant. No evidence was produced to indicate why the plaintiff should be charged for services furnished to Father Graham's operation.
Supplementing the foregoing facts are some further findings as appear in subsequent sections of this memorandum.
 I.
In the argumentative portions of their respective briefs, both parties discuss modification of the lease. The defendant's claim is that the lease was modified orally on several occasions the first being the number of beds available when the defendant began its occupancy on December 1, 1988. The plaintiff contends that any oral modification would be ineffective since the lease states it "shall not be modified in any manner except by an instrument in writing executed by the parties." The court does not agree with the plaintiff's positions that the lease, with its original term for one year and its first renewal term for one year expiring November 30, 1990, cannot possibly be modified except in writing because of the parol evidence rule, the statute of frauds or its stated terms. See General Electric Supply Co. v. SNETCO,185 Conn. 583, 604 (1981); Galvin v. Simons, 128 Conn. 616, 619-20
(1942). Such agreement is unnecessary, however, in that this case does not involve a modification at all but rather is concerned with the terms of the lease as written.
Whether the stated monthly rental of $16,500.00 or the alternative method of computation of thirty-four beds were not CT Page 1820 available in December, 1988, presented a question of fact for the court to decide. Monroe Ready Mix Concrete, Inc. v. Westcor Development Corp., 183 Conn. 348, 351 (1981). In this regard, the court finds that when the representatives of the parties met in December 12, 1988, the question of beds not being available was not even discussed and that the issue of whether all beds were available at the beginning of December, 1988 was never one discussed with the parties. As with all special defenses, the defendant had the burden to prove that the plaintiff accepted one-half of the rent as full payment or otherwise forewent the right to collect the remaining one-half for reasons of waiver or modification. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234,237 (1987). From its position as arbiter of the facts and the credibility of witnesses, the court concludes that the defendant did not satisfy its burden. Rodziewicz v. Giguere,5 Conn. App. 293, 295 (1986). The plaintiff is entitled to recover $8,250.00 as the remaining rent due for December, 1985.
The court's next determination concerns the credit of $2,793.93 taken by the defendant against the contracted rent in March, 1990, the last month of occupancy. From the $2,793.93, the court finds that $546.80 was erroneously deducted in that it represented utility services furnished Sts. Martin and James Respite, Inc., the defendant's sublessee. Instead of paying $13,706.07 for the last month's rent minus the setoff, the defendant should have paid $14,252.87. The difference of $546.80 is added to the previously awarded sum of $8,250.00 for damages of $8,796.80.
 II.
In the complaint, the plaintiff also asked for interest and attorney's fees.
With exceptions that are inapplicable, General Statutes Section 37-3a provides for interest of 10% per year to be added to damages. The allowance of prejudgment statutory interest has been considered an equitable decision for the court. General Electric Supply Co. v. SNET Co., supra at 605. The real question that the court must answer is whether or not under the circumstances the detention of money was wrongful. Cecio Bros. Inc., v. Feldmann,161 Conn. 265, 275 (1971). or as the question is sometimes phrased, do the interests of justice require the allowance of interest as damages for the loss of use of money. Simonetti v. Lovermi, 15 Conn. App. 722, 728 (1988).
Of the amount of $8,796.80 awarded as damages, $8,250.00 has been a liquidated sum since December 1, 1988 when it was payable pursuant to the terms of the lease. A debt is liquidated when a debtor knows precisely how much is to be paid and to whom payment CT Page 1821 is to be made. Costello v. Hartford Institute of Accounting, Inc., 193 Conn. 160, 165 (1984). Although the debt was liquidated from its inception, the first written demand for the money was not forthcoming until some time in March, 1989. In the exercise of discretion, the court adds interest of 10% per annum to $8,250.00 from April 1, 1989 to the date that this judgment is filed.
Interest is limited to $8,250.00 as the liquidated amount of unpaid rent. Having sat through several hours of Patricia Gray's testimony, the court is convinced that the inclusion of the amount of utility services provided to Sts. Martin and James Respite, Inc. in the defendant's setoff resulted from an honest mistake on her part.
The lease provides for an attorney's fee so the question becomes what fee would be reasonable. Buccino v. Cable Technology, Inc., 25 Conn. App. 676, 679 (1991). A court may rely on its general knowledge of what has occurred in a case to support an award of an attorney's fee. Bizzoco v. Chinitz, 193 Conn. 304,310 (1984). The plaintiff's attorney prepared pleadings, took the deposition of Rev. Cascia, underwent a trial on November 6, 7 and 13, 1991 and submitted a brief. Fifteen per cent of $8,796.80 or $1,319.52 is considered reasonable and awarded.
 III.
The defendant's special defenses of waiver and termination of lease prior to any default have not been ignored. They simply were not supported by the evidence. A waiver implied from conduct, as pointed out in S.H.V.C., Inc. v. Roy, 188 Conn. 503,510 (1982) is akin to an estoppel which requires one party to have done something that is intended to induce another to believe in the existence of certain facts and to act on that belief. No such actions of the plaintiff and no reliance by the defendant was shown to have existed. The defense of termination of lease before any default was patently untenable. A default was proved by the defendant's failure to pay the full rent in the first month of the lease.
 IV.
The court awards the plaintiff $8,796.80 damages plus $2,474.74 interest and $1,319.52 attorneys fees. The total award is $12,591.06 and taxable costs.
BARNETT, J.