[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONON DEFENDANT'S MOTION TO OPEN JUDGMENT DATED MAY 3, 1995
The defendant Maureen Clark (hereafter "Clark"), has moved to open a certain judgment rendered against her on June 22, 1992, pursuant to the provisions of Conn. Gen. Stat. § 52-212a
and Practice Book § 326.
A review of the file is necessary for a proper perspective.
Procedural History
Suit was initially brought by the Bank by writ, summons and complaint dated August 11, 1989 and filed on August 29, 1989 made returnable on September 12, 1989.
The lawsuit basically claimed the execution of a commercial line of credit demand note by Clark on March 1, 1988, subsequent demand for payment and a failure and refusal to pay. The writ claimed money damages, interest, attorney's fees and costs of suit.
The Bank filed an application for a prejudgment remedy dated August 10, 1989 with accompanying affidavit seeking an attachment of certain real estate which was granted by the court (Hurley, J.) on August 14, 1989 in the amount of $140,000.00. CT Page 2372
Clark appeared by counsel, Attorneys Lasala, Walsh and Wicklow on September 18, 1989. The appearance form was signed by Barbara E. Crowley, a member of the firm.
The bank filed a motion for default for failure to disclose a defense on November 20, 1989 which was granted by the court Koletsky, J.) on December 11, 1989. Thereafter, on January 16, 1990, at the request of both the Bank's counsel and Clark's counsel, the default was set aside.
On June 21, 1990, an appearance was filed by Attorneys Lasky and Vaughn on behalf of the garnishee Colchester Arms Partnership.
On August 16, 1990, an appearance was filed by Attorney Barbara E. Crowley individually, on behalf of Clark individually, in lieu of the appearance of Lasala, Walsh and Wicklow.
On May 2, 1990, a stipulation by counsel for the Bank and Clark provided for a prejudgment remedy as concerns Clark's interest in Colchester Arms Partnership. On October 17, 1990, another motion for default for failure to disclose a defense was filed by the Bank and granted by the court (Vasington, J.) on November 13, 1990.
On January 7, 1991, the Bank moved to set aside a judgment of dismissal which was granted by the court (Hurley, J.) on February 4, 1991.
On April 4, 1991, Clark moved to set aside the default of November 13, 1990, which motion was granted by the court (Mihalakos, J.) on April 29, 1991. On April 23, 1991, Attorney James L. Young, Jr., now a member of the law firm of Andrews, Quinn, Cosgrove and Young, filed an appearance for the Bank in lieu of Attorneys Greenberg and Steenberg.
On April 30, 1991, Clark by her attorney, Barbara Crowley, filed an answer and special defenses to the complaint. The special defenses asserted were to the effect:
 A. That demand for payment of the note would not be made except in the event of default and that the note was not in default at the time payment was demanded. CT Page 2373
 B. That the Bank is obligated to Clark in an amount in excess of $200,000.00 and Clark claims a set off.
On July 5, 1991, the Bank moved to strike the second special defense. This motion was granted by the court (Teller, J.) on August 5, 1991. On October 17, 1991, the Bank filed a reply to the special defense. On June 22, 1992, the Bank and Clark joined in a motion for judgment with stipulation of the parties attached as exhibit A. Exhibit A was entitled Stipulation to Judgment. Exhibit A, the Stipulation to Judgment, dated June 1, 1992, is set forth herein.
STIPULATION TO JUDGMENT
 The parties in the above-entitled action hereby stipulate and agree that Judgment in the above-captioned matter may enter in favor of the Plaintiff, NEW ENGLAND SAVINGS BANK, against the defendant, MAUREEN CLARK, upon the following terms:
 1. Plaintiff, New England Savings Bank, shall obtain a Judgment of money damages against the Defendant, Maureen Clark, for the amount of ONE HUNDRED FIFTEEN THOUSAND EIGHT HUNDRED EIGHTY EIGHT DOLLARS AND 67/100 ($115,888.67).
 2. No post judgment interest will accrue on the money damages amount for a period of one (1) year after the date of the judgment entered upon this Stipulation.
 3. The Judgment of money damages will be deemed to have been paid in full if:
 (a) the sum of FORTY THOUSAND FIVE HUNDRED SIXTY ONE DOLLARS AND 03/100 ($40,561.03) DOLLARS is paid to the New England Savings Bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before three (3) months have elapsed after the date of the Judgment awarded hereupon; or CT Page 2374
 (b) the sum of FIFTY SEVEN THOUSAND NINE HUNDRED FORTY FOUR DOLLARS AND 33/100 ($57,994.33) DOLLARS is paid to the New England Savings Bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before nine (9) months have elapsed after the date of the Judgment award hereupon, but after three (3) months have elapsed after the date of the Judgment awarded hereupon, or
 (c) the sum of SEVENTY FIVE THOUSAND THREE HUNDRED TWENTY SEVEN DOLLARS AND 63/100 ($75,327.63) is paid to the New England Savings bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before one year has elapsed after the date of the Judgment awarded hereupon, but after nine (9) months have elapsed after the date of the Judgment awarded hereupon.
 (d) after one year has elapsed after the date of the Judgment awarded hereupon, the full amount of the unsatisfied Judgment awarded hereupon must be paid in full, including interest accrued thereupon.
 4. The Defendant, Maureen Clark, having been represented by counsel Barbara E. Crowley who at her request has entered an appearance for her in this action and who is authorized to enter into the terms of the Stipulation and to bind Maureen Clark to Judgment, hereby irrevocably waives any and all defects or irregularities in the entry of the Judgment against her, and agrees that she shall not ever raise up or attempt to raise up any defect or failure in the underlying lawsuit or proceedings or any other reason to invalidate or avoid the Judgment Stipulation to hereby, including but not limited to any defect in the Complaint or pleadings, or in the documents upon which the suit is premised, or in the service of process of the writ, summons and Complaint, or that she was not subject to the personal jurisdiction of the Court, or that she did not have notice of these proceedings or of the terms of this Stipulation, or any other reason whatsoever, all of the same being CT Page 2375 hereby irrevocably waived and released. The Defendant, Maureen Clark, in consideration of the New England Savings Bank entering into this stipulation waives any and all rights to file an appeal or otherwise attack or invalidate the judgment entered hereupon.
 5. There is no agreement or stipulation between the Plaintiff and the Defendant regarding this Judgment and the rights of the parties with respect to this Judgment except as is expressly set forth herein. It is specifically agreed that the New England Savings Bank may at any time after the entry of a Judgment hereupon execute upon the Judgment, provided, however, that any funds collected will be credited on the same basis as any funds that might be voluntarily paid by the Defendant as set forth above in section three (3).
 6. In the event that the Defendant, Maureen Clark, files a petition under the Bankruptcy laws of the United States of America, or has such a petition filed against her "involuntarily" within the meaning of the United States Bankruptcy Code and such involuntary petition against her is not dismissed within ninety (90) days of the filing thereof, then the rights of the Defendant Maureen Clark to obtain satisfaction of the Judgment to be entered hereupon under the terms set forth in Sections three (3)(a), (b) and (c) thereof by paying some percentage of the full amount of the Judgment within specified time limits shall be deemed to never have existed, and shall be null and void, and the New England Savings Bank shall be entitled to file a Proof of Claim for the full amount of the Judgment to be entered hereupon, plus such other amounts as may be allowed as claims under the Bankruptcy Code.
On July 20, 1992, the court (Hendel, J.) entered Judgment in accordance with this Stipulation.
The Judgment is set forth herein.
JUDGMENT IN ACCORDANCE WITH STIPULATION
CT Page 2376
 This action, by writ and complaint, claiming damages came to this court at the present time when the parties appeared and filed a written stipulation that judgment be entered as hereinafter set forth.
 The court, having heard the parties on the stipulation, finds that judgment should be entered in accordance with the stipulation.
Whereupon it is adjudged that
 1. The Plaintiff recover of the Defendant ONE HUNDRED FIFTEEN THOUSAND EIGHT HUNDRED EIGHTY EIGHT DOLLARS AND 67/100 ($115,888.67) money damages without costs; and
 2. No interest shall accrue on the Judgment amount until one year has elapsed after the date of this Judgment, at which time interest shall begin to accrue at the statutory rate; and
 3. The Judgment of money damages will be deemed to have been paid in full if:
 (a) the sum of FORTY THOUSAND FIVE HUNDRED SIXTY ONE DOLLARS AND 03/100 ($40,561.03) is paid to the New England Savings Bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before three (3) months have elapsed after the date of this Judgment; or
 (b) the sum of FIFTY SEVEN THOUSAND NINE HUNDRED FORTY FOUR DOLLARS AND 33/100 ($57,944.33) is paid to the New England Savings Bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before nine (9) months have elapsed after the date of this Judgment, but after three (3) months have elapsed after the date of this Judgment, or
 (c) the sum of SEVENTY FIVE THOUSAND THREE HUNDRED TWENTY SEVEN DOLLARS AND 63/100 ($75,327.63) is paid to the New England Savings CT Page 2377 Bank by or on behalf of the Defendant regarding the debt that is the subject of the instant suit before one year has elapsed after the date of this Judgment, but after nine (9) months have elapsed after the date of this Judgment.
 (d) after one year has elapsed after the date of this Judgment, the full amount of the unsatisfied Judgment is paid in full, including interest accrued thereupon.
 This judgment being entered on this, the 20th day of July, 1992.
Hendel, J.
On March 29, 1995, Attorney James L. Young, Jr., as a member of his firm filed an appearance on behalf of National Loan Investors L.P. successor in interest to New England Savings Bank. On March 29, 1995, a motion was filed by National Loan Investors asking that it be substituted a plaintiff in place of New England Savings Bank inasmuch as National Loan Investors was now the current owner of the judgment by virtue of assignment. This motion was denied without prejudice by the court (Hurley, J.) on May 5, 1995.
On April 10, 1995, new counsel appeared for Clark in lieu of Attorney Barbara Crowley.
On May 3, 1995, counsel for Clark filed the pending motion to open judgment claiming that the defendant Clark had not signed the stipulation to judgment, that Clark did not agree to the terms thereof, that Clark's attorney Barbara Crowley was without authority to sign the stipulation, that Attorney Crowley was without authority to release Clark's claims for reimbursement and set off, that Clark was not aware of the stipulation at the time it was executed and that the stipulation was entered without Clark's consent or knowledge and was the result of fraud, accident or mistake.
The Court Makes the Following Findings of Fact
 From the Exhibits.
The defendant Clark executed a commercial line of credit CT Page 2378 demand note to New England Savings Bank on March 1, 1988 in the face amount of $100,000.00. Expiration date on said note was March 1, 1989. The note contained the following special instruction "annually principle must be paid down to zero for 30 days." (See Plaintiff's Exhibit B.)
Clark's attorney, Barbara Crowley, wrote to the Bank's counsel, Attorney Young, on November 6, 1991 and the letter contained the following.
 "As discussed, our proposal is based on a stipulated judgment in an amount equal to the current outstanding balance owed New England Savings Bank less offset credits as discussed above. Based on the date of entry of that stipulated judgment the terms would be:
 (1) No post judgment interest will accrue for a period of one year;
 (2) The judgment amount will be payable at the following reduced percentages:
(a) 35% if paid within three months;
 (b) 50% if paid after three months, but before nine months have elapsed;
 (c) 65% after nine months, but before one year has lapsed;
 (d) 100% one year has elapsed, and thereafter;
 (3) New England Savings Bank will be free to execute on that judgment at any time after entry provided, however, that any funds collected will be credited on the same basis as set forth above; i.e.
 (a) Within first three months each $1,000 of collected funds will be credited as $2,857.14 against total judgment figure;
 (b) After three months, but before nine months, each $1,000 of collected funds CT Page 2379 will be credited as $2,000;
 (c) After nine months, but before one year, each $1,000 of collected funds will be credited as $1,538.46;
 (4) Similarly, any partial payments which Ms. Clark would make during the one year period would be credited on the same scheduled basis."
(See Defendant's Exhibit 2.)
Attorney Young wrote to Attorney Crowley on April 19, 1992. The letter contained the following.
 "Enclosed herewith is a draft Stipulation to Judgment in accordance with our earlier discussions regarding this matter. Please let me have your thoughts regarding the draft as soon as possible as my client would like to see this matter brought to a conclusion. I am including my work sheet as to how I calculated the amount of the judgment."
(See Defendant's Exhibit 4.)
Attorney Young faxed a message to Attorney Crowley on April 21, 1992. The message, in part, contained the following.
 "COMMENTS: $129,309.11 from attached, minus $7,700 furniture minus $3,000 and $2,720.44 as in your letter of 11/6/91 = $115,888.67 as total judgment and payoff in reduced amounts over first year note that willing to allow "credits" is only to bring matter to a close and not as any agreement or indication or admission that such amounts are validly due — P.S. we should get a release from Ms. Clark for such claims though."
(See Defendant's Exhibit 6.)
On July 22, 1992, Attorney Young wrote to Attorney Crowley confirming that the judgment upon the stipulation had been entered by the court (Hendel, J). (See Defendant's Exhibit 12.) CT Page 2380
On September 13, 1993, Fleet Management and Recovery Corporation wrote to Clark notifying her of the sale of her loan to Ali, Inc. and asking her to contact them to resolve payment of the loan. (See Defendant's Exhibit 16.)
On October 27, 1993, Fleet Management again wrote to Clark asking that she contact them. (See Defendant's Exhibit 17.)
On December 22, 1994, National Loan Investors L.P. wrote Clark indicating that N.L.I. assumed the account and that the loan had been transferred to them. (See Defendant's Exhibit 18.)
On April 12, 1995, Attorney Young wrote to Clark indicating his office represented N.L.I. and that he intended to move for the examination of a judgment debtor. (See Defendant's Exhibit 20.)
From the Witnesses
Maureen Clark initially became involved with New England Savings Bank in 1988 as concerns several unsecured lines of credit.
Clark had meetings with bank representatives named Maguire and Chambers. At one time Clark's home in North Stonington was attached by the Bank and later released. Clark was involved in at least 6 or 7 meetings with bank representatives during the period 1989 through 1992. Clark was in the real estate investment business. Clark had an interest in a business entity known as U.S. Management and Investors from which she derived income.
Clark's business, U.S. Management, at one time managed a complex at Crystal Lake. New England Savings Bank liquidated Crystal Lake by auction sale.
Clark found it difficult to get in touch with Attorney Barbara Crowley. Clark finally obtained her file from Attorney Barbara Crowley in June, 1995. Clark identified her signature on the promissory note dated March 1, 1988 during trial. Clark is employed by New England Equity. At one time she shared office space at 135 Whiting Avenue, New Haven with CT Page 2381 Attorney Crowley. Clark was aware of the failure of New England Savings bank in 1993. Attorney Crowley's secretary was Betsy, and it was with Betsy's assistance that Clark picked up her file. Clark is familiar with commercial transactions and litigation.
Attorney Young is a graduate of Northwestern School of Law. He graduated from Lewis and Clark College. Young has been involved in various phases of lending by banks, has been a trust officer, has supervised commercial corporate lending in the two to five million dollar range. Young is a former member of the firm Waller, Smith Palmer, and later Greenberg Steenberg. Attorney Young engages in a wide range of commercial banking. He has been practicing law for fifteen years.
Attorney Crowley's paralegal called Attorney Young on June 19, 1992 and advised Young that Clark had instructed Crowley to sign the stipulation which had been forwarded by Young and which was subsequently offered to the court.
The stipulation was sent to Attorney Crowley on June 1, 1992, but not executed until June 19, 1992.
Young had at least four meetings with Attorney Crowley at which meetings Clark was present.
a. October 1989
b. February 1990
c. May 1990
d. January 1991
The meetings all took place either at the Bank or the offices of Greenberg Steenberg.
The Law and Discussion
A motion to set aside or open a civil judgment is governed by Practice Book § 326. A motion must be filed within four months of the issuance of judgment. Id.; Steve ViglioneSheet Metal Co. v. Sakonchick, 190 Conn. 707, 710,462 A.2d 1037 (1983). "After the four month period has expired, the CT Page 2382 court no longer has jurisdiction to make other than clerical modifications or corrections." DiSimone v. Vitello, 6 Conn. App. 390,392, 505 A.2d 745 (1986), Citing Van Mecklenberg v.Pan American World Airways, Inc., 196 Conn. 517, 518,494 A.2d 549 (1985). See Aliff v. Fromm, 6 Conn. L. Rptr. 412 (1992);Keating v. Jordan, 4 Conn. L. Rptr. 631 (1991). Nevertheless, "a delay in notifying the defendant of the judgment `would merely extend the time in which the defendant could move to set aside'" or open the judgment. Noethe v. Noethe, 18 Conn. App. 589,595-96, 559 A.2d 1149 (1989) quoting DiSimone,
supra, 393; see Letticia v. Branco, 10 Conn. L. Rptr. 393
(January 10, 1994, McDonald, J.); Habura v. Koctianwicz,10 Conn. L. Rptr. 323 (December 20, 1993, Flynn, J.).
"The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence, judgments obtained by fraud may be attacked at any time." Kentworthy v.Kentworthy, 180 Conn. 129, 131, 429 A.2d 837 (1980). Absent a claim of subject matter jurisdiction, the rules of practice allow substantive modifications beyond the four month period "where the parties have consented or where the court has continuing jurisdiction." DiSimone, supra, 6 Conn. App. 392; Practice Book § 326. The parties may waive the requirement that a motion to reopen be filed within four months of judgment. Practice Book § 326. This requirement may be waived by conduct. Navickas v. Breen, 1 CSCR 383 (June 4, 1986, Aspell, J.). Where the four month period concludes on a Saturday, a motion to open filed on the next business day has been deemed timely filed. Napolitano v. Burke,1 Conn. L. Rptr. 275 (February 13, 1990, Meadow, J.).
"While such a motion should not be readily granted nor without strong reasons, it ought to be when there appears cause for which the court acting reasonably would feel bound in duty so to do." Steve Viglione Sheet Metal Co., supra,190 Conn. 710-11, quoting McCulloch v. Pittsburgh Plate Glass Co.,107 Conn. 164, 167, 140 A. 114 (1927). Practice Book § 326 does not contain a precise list of what the moving party must show in order to prevail, a party wishing to open judgment under § 326 must nevertheless demonstrate that there is a `good and compelling reason' for the court to grant the motion."Dixon v. Kane, 8 Conn. L. Rptr. 574 (March 3, 1993, Lewis, J.) quoting Hirtle v. Hirtle, 217 Conn. 394, 398, 586 A.2d 578
(1991). Once the court has refused to open a judgment, "the CT Page 2383 action of the court will not be disturbed on appeal unless it has acted unreasonably and in clear abuse of discretion." Id., 711. The decision whether to grant or deny a timely motion to reopen is discretionary. Acheson v. White,195 Conn. 211, 214-15, 987 A.2d 197 (1985).
A judgment rendered upon a default or nonsuit may be opened within four months of judgment, by a moving party prejudiced thereby. Practice Book § 377. There must be a showing of a reasonable cause or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same." Id., see also Costello v.Hartford Institute of Accounting, Inc., 193 Conn. 160, 167,475 A.2d 310 (1984); General Statutes § 52-212. Negligence, however, is not a ground for setting aside a nonsuit.Jaconski v. AMF, Inc., 208 Conn. 230, 239, 543 A.2d 728
(1988). The motion made pursuant to Practice Book § 377 shall be written, verified by the oath of the complaint or his attorney, and shall state in general terms the nature of the claim or defense, and the reason why the plaintiff or defendant failed to appear. Practice Book § 377.
Where a case is dismissed pursuant to Practice Book § 251, failure to prosecute with due diligence, the appropriate way to open the judgment is by filing a motion to open pursuant to Practice Book § 326 not Practice Book § 377. Pump ServicesCorp. v. Roberts, 19 Conn. App. 213, 216, 561 A.2d 464 (1989).
The defendant's Motion to Open is pursuant to 52-212a. The defendant claims that the judgment may be opened because the law provides that judgments obtained by fraud, accident or mistake may be set aside beyond four months from their entry.
Fraud requires proof that is clear and convincing. It must be strictly proved by clear precise and unequivocal evidence. Bound Brook Assoc. v. Norwalk, 198 Conn. 660, 666
(1986). The defendant has relied heavily on Kenworthy v.Kenworthy, 180 Conn. 129, 429 A.2d 837, 838 (1980). Kenworthy
does say that a judgment, even a stipulated judgment, when obtained by fraud can be opened beyond the four month period set forth in section C.G.S. 52-212 or P.B. 377. CT Page 2384
If a judgment is accepted by mistake the mistake must be mutual. NESB clearly intended to enter this judgment and understood its purpose. There is no colorable claim the judgment was entered as a result of mutual mistake.
The defendant is therefore left with accident. Bryan v.Reynolds, 143 Conn. 456, 123 A.2d 1992, 194 (1954). The judgment was sent to Crowley for signature, signed and returned to Young then filed with the Court. It could not have been by accident because all counsel did exactly what they intended and agreed to.
The Defendant is now asking the Court to believe she did not consent to the judgment and that Crowley despite the representations made in the stipulation, signed the stipulation without authority. That the judgment was entered by fraud, accident, or mistake. Clark never stated unequivocally that it was one of the three. Clearly they are mutually exclusive as "fraud" requires intent and accident speaks to a lack of intent.
Clark's testimony is not credible. Clark claims to have not spoken with Crowley about the case for over two years. This shows her inattentiveness and lack of diligence.
If Clark did not agree to the stipulation then one must ask why a counter-proposal was never forth coming as she suggests in her correspondence. The answer is simple. NESB wanted to bring closure to the matter and the stipulation represented what NESB was willing to do.
The judgment herein was obtained by NESB which is now a defunct entity. Pursuant to Section 77(c) of the Practice Book an appearance of counsel is deemed withdrawn within 180 days of judgment having entered. The Judgment herein entered more than two years ago. Therefore, there is no counsel of record for New England Savings Bank nor the Federal Deposit Insurance Corporation as its successor. Practice Book Section 122 requires that all pleadings be served on the party's attorney or on the party. The certification by the defendant does not indicate whom was served. Section 121(c) states that any pleading asserting new or additional claims against non-appearing parties or defaulted parties shall be served on said party. Section 122 provides that service under 121(c) shall be made in the same manner as the original writ and CT Page 2385 complaint or as ordered by the Court. The purpose of this requirement is to prevent an injustice being enforced upon a party without reasonable notice. Ruggiero v. Ruggiero,35 Conn. Sup. 581, 583-585 (1978).
As the case presently stands NESB is the plaintiff of record. Before the court can reopen the case one finding it must make is that the defendant has or had good and valid defenses at the time of judgment. Such defenses would run against the FDIC as Receiver not NLI. The Receiver of NESB has not been appraised of the hearing and will be denied fundamental fairness if not allowed to defend the claims asserted as the basis for opening the judgment. Failure to receive notice of the motion to reopen raises constitutional due process issues. See, Citicorp Mtg. Inc. v. D'Avanzo,31 Conn. App. 621, 626 A.2d 800 (1993). P.B. Section 122 requires notice to the adverse party.
Failure to provide notice to parties who may be required to defend claims against the failed institution would deprive that party of its constitutional right of due process. The defenses raised by Clark are claims which arose prior to NESB's failure and the judgment entering. These defenses cannot be asserted against the purchaser of an asset from the FDIC as Receiver. D'Oench Duhme Co. vs. Federal DepositInsurance Corporation, 315 U.S. 447 (1942) and Title12 U.S.C. § 1823 (e); Langley vs. Federal Deposit Insurance Corp.,484 U.S. 86, 108 S.Ct. 396, 401 (1987). Therefore, any notice to NLI is not sufficient.
The necessary elements which must be established to opena judgment alleged to be obtained by fraud are:
 a. There must be no laches or unreasonable delay by the party alleging the fraud.
 b. There must have been diligence in the original action in trying to expose the fraud.
 c. There must be clear proof of the perjury or fraud.
 d. There must be a substantial likelihood that the result will be different. CT Page 2386
See, Varley v. Varley, 180 Conn. 1, 428 A.2d 317, 318
(1980). The standard is applicable to every motion to open.
The administration of justice requires that a motion to open be denied unless the moving party alleges and shows reasonable cause for relief. Manchester State Bank v. Reale,172 Conn. 520, 375 A.2d 1009, 1012 (1917).
Here the defendant claims that she was not made aware of the alleged fraudulently procured judgment until April of 1995 when she was served with post judgment interrogatories. The defendant in this action alleged she was owed in excess of $150,000.00 by NESB. Said claims were raised as setoff and were stricken by the court. The court need not open the judgment unless a good defense existed. Beloni v. ThomasMortgage Co., 111 Conn. 103, 105, 149 A. 218 (1930).
Although this defendant asserted a claim for $150,000.00 we are to believe that almost three years passed before she made any inquiry as to the status of her case and the monies alleged to be owed her. By the defendant's own admission she did nothing until served with the interrogatories.
Equity will not relieve against the operation of a judgment due to the inattention or negligence of a party or her attorney. Palverari v. Fota, 129 Conn. 38, 28 A.2d 229
(1942); Jarvis v. Martin, 77 Conn. 19, 21, 58 A. 15 (1904).Hoey v. Investors Mortgage and Guaranty, 118 Conn. 226, 230,171 A. 438 (1934).
The defendant alleges that she did not consent to the stipulated judgment and that her attorney perpetrated a fraud against her in stipulating to the judgment. In order to have a judgment opened for fraud the defendant must show 1) that there has been no unreasonable delay or laches after the discovery of fraud, 2) there was diligence in trying to uncover the fraud in the original action, 3) clear proof of the fraud, and 4) a substantial likelihood the new trial will be different. Varley v. Varley, 180 Conn. 1, 428 A.2d 317
(1980).
If the defendant cannot show that even in the face of fraud the judgment would be different it should not be opened.Varley, Testa v. Carroll Hamburger Sys. Inc., 115 Conn. 297,224 A.2d 739 (1966). The test is two pronged. Thus, both the CT Page 2387 existence of a good faith defense and fraud in obtaining the judgment must be shown. Costello v. Hartford Inst. Co,Accounting, 193 Conn. 160, 475 A.2d 310 (1984). If both elements are not satisfied then the court need not open the judgment.
Since the underlying claim of the defendant was stricken she cannot show that she has a meritorious defense to the action which existed at the time of judgment that would alter the existing judgment. The remaining claim in her first special defense, an oral agreement not to demand the loan, is barred by the D'Oench Duhme Doctrine. It has been held to be an abuse of the courts discretion to open a judgment where the result will be the same. Pelletier v. Paradis, 4 Conn. Cir. 396, 232 A.2d 925 (1966).
If the Defendant's argument is one of mistake the mistake must be mutual, not unilateral, before the judgment can be opened. Soloman v. Keiser, 22 Conn. App. 424, 572 A.2d 1103
(1990), Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461, 466,440 A.2d 159 (1981). Clearly the testimony indicates that NESB was not mistaken as to what it was doing or what the terms of the agreement were.
If the Defendant's claim is that the stipulation entered by accident it still may not be opened. A motion to open should not be granted where the judgment is entered as a result of the moving party's own negligence. Jaquith v.Revson, 159 Conn. 427, 270 A.2d 559 (1970).
The defendant is bound by the actions of her attorney.
Attorney Crowley was retained by Clark to represent her in this action. Crowley in a written document stipulated to judgment against Clark. In the Stipulation Crowley represented she was authorized to enter the judgment. The adversarial system requires that a client be responsible for the acts of an attorney or agent freely chosen by the client.Thode v. Thode, 190 Conn. 694, 698, 462 A.2d 4, (1983). When the attorney acts in furtherance of the business for which she has been retained the act will be imputed to the client.Lafayette Bank Trust Co. v. Aetna Casualty Surety Co.,177 Conn. 137, 140, 411 A.2d 937 (1979).
Crowley stipulated to a judgment against her client in a CT Page 2388 lawsuit by the Bank seeking to collect on a sum due the Bank.
12 U.S.C. § 1821 (d)(5)-(13) sets forth the administrative claims procedure that shall be followed by a party who seeks to raise claims against a failed institution for which the FDIC has been appointed as Receiver. The claims process isexclusive. The exhaustion of administrative remedies is required where Congress imposed such a requirement.Weinberger v. Salfi, 422 U.S. 749, 95 S.CT. 2457 (1975). The language in FIRREA indicates a congressional intent to require exhaustion of administrative remedies. Melzier v. RTC,952 F.2d 879, (5th Cir. 1992). Congress intended a party to first submit its claim to the FDIC before commencing a suit on the claim. Circle Industries v. City Federal Savings Bank,749 F. Sup. 447, 455 (E.D. NY. 1990).
NESB was placed into receivership on May 21, 1993 and the FDIC was appointed as receiver. The defendant Clark claims to have had defenses to NESB's action. Pursuant to 12 U.S.C. § 1823
(d)(5) any claim that Clark may have had was required to be filed with the FDIC for a determination on whether it would be allowed or disallowed. The defendant has offered no proof that this mandatory requirement was followed.
Participation in the administrative claims process is mandatory for all parties regardless of whether lawsuits to enforce claims were filed before the FDIC appointment as receiver. Marquis v. FDIC, 965 F.2d 1148, 1157 (1st Cir. 1992).
The defendant cannot pursue a motion to open the case as she has offered no proof that she (a) has presented a claim to the FDIC and (b) exhausted her administrative remedies which would otherwise allow a judicial claim to proceed.
The failure to timely file an administrative claim is anabsolute bar to raising such a claim.
In her motion to open the defendant Clark alleges she has a right to setoff and has other good and valid defenses to the judgment. No allegation is made or proof offered that the defendant timely presented such claims to the FDIC as required by 12 U.S.C. § 1821 (d). Clark has testified under oath she knew of the bank's failure but did not file a proof of claim. CT Page 2389
The failure to file a claim is not excused even if a claimant alleges they did not receive notice of the requirement to file a proof of claim. See; Espinosa v.DeVasto, 818 F. Sup. 438 (D.C.Mass. 1993).
12 U.S.C. § 1821 and the D'Oench Duhme Doctrine mandatedenial of the Defendant's Motion to Reopen.
In order to open a judgment the movant must show that she has good faith and bona fide defenses to the underlying action. On May 21, 1993, almost one year after the judgment entered the FDIC was appointed as receiver of NESB. Pursuant to federal common law and 12 U.S.C. § 1821 any claim against the asset of a failed financial institution of which the FDIC has been appointed receiver must satisfy very strict requirements otherwise the claim is defeated.
A. 12 U.S.C. § 1823 (e) and D'Oench Duhme.
Federal law bars claims against the FDIC as receiver when claims, like those asserted by the Defendant, are based upon allegations of secret agreements, misrepresentations, or other undisclosed conditions that tend to make the FDIC susceptible to fraudulent arrangements or to diminish the FDIC's interest in assets it acquires as receiver of failed institutions.Timberland Designs, Inc. v. First Service Bank for Savings,932 F.2d 46 (1st Cir. 1991); Langley v. FDIC, 484 U.S. 86
(1987); D'Oench Duhme Co., v. FDIC, 315 U.S. 447 (1942). This doctrine of estoppel was established in the landmark case ofD'Oench Duhme, in which the United States Supreme Court held that a defendant could not rely on unwritten, undisclosed agreement made with a failed bank as a defense to an action brought by the FDIC to recover payment on a note.315 U.S. at 460.
The purpose of the estoppel doctrine established byD'Oench Duhme and Section 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities . . . and when the FDIC is deciding whether to liquidate a failed bank . . . or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank . . . Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank CT Page 2390 records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.
As the Fifth Circuit has noted, "the doctrine has evolved to a rule that today is expansive and perhaps startling in its severity." Bowen v. FDIC, 915 F.2d 1013, 1015 (5th Cir. 1990). Thus, the doctrine bars not only claims and defenses based on "agreements", but also claims and defenses on fraudulent misrepresentations, Langley, 484 U.S. at 91-92.
The federal holder in due course doctrine is a development of federal common law that provides the FDIC with the protections of a holder in due course under commercial law whether or not it satisfies the technical prerequisites of state law. See, FDIC v. P.L.M. International, Inc., 834 F.2d 248,254 (1st Cir. 1987); FSLIC v. Cribbs, 918 F.2d 557, 559
(5th Cir. 1990). Under the federal holder in due course doctrine, the FDIC has a complete defense against personal claims or defenses to the borrower's liability on the instrument. See, e.g., FDIC v. P.L.M. International, Inc.,834 F.2d, at 254; Campbell Leasing, Inc. v. FDIC,901 F.2d, at 1248; FSLIC v. Murray, 853 F.2d 1251, 1256 (5th Cir. 1988). This doctrine promoted the necessary uniformity of law while it counters individual state laws that would frustrate a basic FDIC objective: promotion of stability and confidence in financial institutions. Campbell Leasing, Inc. v. FDIC,901 F.2d, at 1249; FSLIC v. Murray, 853 F.2d, at 1256.
Under the federal common law doctrine, when the Corporation, as part of a purchase and assumption transaction, acquires assets in good faith, for value, and without actual knowledge of any defense against those assets, it takes the asset free of all defenses that would not prevail against a holder in due course. FDIC v. Wood, 759 F.2d 156, 161 (6th Cir. 1985). The principal rationale for giving the Corporation federal holder in due course protection is to shield the public funds held by the Corporation and thereby maintain public confidence in the integrity of the United States banking system. See, e.g., FDIC v. Bank of SanFrancisco, 817 F.2d 1395, 1398 (9th Cir. 1987).
Under federal common law, the Corporation's good faith and lack of knowledge are presumed. Assets acquired by the Corporation in a purchase and assumption are presumed to have been acquired in good faith, FDIC v. Turner, 869 F.2d 270, 273
CT Page 2391 (6th Cir. 1989) and are presumed to have been acquired without knowledge of any defenses, FDIC v. Wood, 758 F.2d 156, 162
(6th Cir. 1985).
The defenses available to the FDIC are transferred to the asset purchaser, assignees, or transferees. Fleet Bank v.Power, 789 F. Sup. 451, affirmed 991 F.2d 786 (D.Me. 1992); Ownership of the asset is irrelevant as once it goes through the hands of the FDIC it is cleansed of defenses against it.
On the basis of all of the foregoing, the defendant offers to the court no path or course by which it can overcome the mandate of D'Oench Duhme, whereby the cleansing effect of the F.D.I.C. takeover can be avoided.
It must be remembered that New England Savings Bank is no longer a viable F.D.I.C. recognized banking entity. New England Savings Bank is a failed institution and defenses which might have been asserted against it, if it were still a thriving banking entity, are no longer available to Clark at this time.
The defendant, in her brief, does not appear to recognize this problem.
Additionally, a further substantial concern of-the court was the failure of the defendant to produce as a witness, Attorney Crowley. Certainly, as to many issues, if Crowley had testified, considerable light could have been cast on many actual issues. Counsel indicated diligent efforts had been made to secure Attorney Crowley's appearance but to no avail. Certainly, however, in the many months between the filing of the motion and the lengthy hearing on this matter commencing on December 1, 1995, counsel might have been located at least for a deposition.
For all of the foregoing, the motion to open the judgment is denied.
Austin, J. CT Page 2392